SAIRA HUSSAIN (SBN 300326)
saira@eff.org
JENNIFER LYNCH (SBN 240701)
jlynch@eff.org
MARK RUMOLD (SBN 279060)
mark@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>                     Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY,<br><br>                  Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552** |

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiff seeks the expedited processing and release of records that Plaintiff requested from Defendant Department of Homeland Security, and its components Immigration and Customs Enforcement and Customs and Border Protection, concerning the agency's use of Rapid DNA testing on migrant families entering the United States.

## PARTIES

2.     Plaintiff Electronic Frontier Foundation ("EFF") is a not-for-profit corporation established under the laws of the Commonwealth of Massachusetts, with offices in San Francisco, California and Washington, D.C. EFF is a donor-supported membership organization that works to inform policymakers and the general public about civil liberties issues related to technology and to

act as a defender of those liberties. In support of its mission, EFF uses the FOIA to obtain and disseminate information concerning the activities of federal agencies.

3.      Defendant Department of Homeland Security ("DHS") is an agency of the Executive Branch of the United States Government. DHS is an "agency" within the meaning of 5 U.S.C. § 552(f). Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP") are components of Defendant DHS.

## JURISDICTION

4.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## VENUE AND INTRADISTRICT ASSIGNMENT

5.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.      Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where Plaintiff is headquartered.

## FACTUAL ALLEGATIONS

### History of DNA Collection in the Immigration Context

7.      Unlike fingerprints, which can only be used for identification, DNA provides "a massive amount of unique, private information about a person that goes beyond identification of that person." *State v. Medina*, 102 A.3d 661, 682 (Vt. 2014) (citations omitted). "A DNA sample . . . contains [a person's] entire genetic code—information that has the capacity to reveal the individual's race, biological sex, ethnic background, familial relationships, behavioral characteristics, health status, genetic diseases, predisposition to certain traits, and even the propensity to engage in violent or criminal behavior." *People v. Buza*, 4 Cal. 5th 658, 720 (2018) (Cuéllar, J., dissenting) (citations omitted). Given the "vast amount of sensitive information that can be mined from a person's DNA," courts have been "mindful of the . . . very strong privacy interests that all individuals have in this

information." *United States v. Mitchell*, 652 F.3d 387, 407 (3d Cir. 2011) (citations omitted).

8.     For many years, the immigration system functioned without DNA testing. In 2000, Immigration and Naturalization Service, the predecessor agency to DHS, implemented a DNA testing policy for parentage verification.[1] The policy, known as the Cronin Memo, intended to provide guidance to immigration field offices on the use of DNA testing for family-based immigrant visa petitions.[2] The Cronin Memo allowed immigration officials to suggest, but not require, DNA testing when documentation could not verify a family relationship.[3] It further stated that the petitioner had to select an accredited laboratory to conduct the testing, and also had to bear the cost of the testing.[4] The Cronin Memo identified that the agency "ha[d] no statutory or regulatory authority to require DNA testing" and also recognized that "no parentage testing, including DNA testing, is 100 percent conclusive."[5]

9.     DHS also has considered collecting DNA from immigrants more broadly. In 2005, Congress passed the DNA Fingerprint Act of 2005, which granted the Attorney General the power to authorize and direct federal agencies, including DHS, to collect DNA from individuals arrested or detained under federal authority, including from non-U.S. persons.[6] The Department of Justice issued regulations requiring federal agencies to collect DNA from people who were arrested, facing charges, or convicted, as well as from "non-United States persons" who were merely detained.[7] However, these regulations specifically exempted DHS from collecting DNA from certain classes of non-U.S. persons, including individuals "lawfully in, or being processed for lawful admission to, the United States;" individuals "held at a port of entry during consideration of admissibility and not subject to further detention or proceedings;" and individuals "with respect to whom the Secretary of

---

[1] Memorandum from Michael D. Cronin, Acting Exec. Assoc. Commissioner, Immigration & Naturalization Serv., "Guidance on Parentage Testing for Family-Based Immigrant Visa Petitions (July 14, 2000), *available at* https://www.aila.org/infonet/ins-on-parentage-testing (hereafter, "Cronin Memo").
[2] *Id.*
[3] *Id. See also* Emily Holland, *Moving the Virtual Border to the Cellular Level: Mandatory DNA Testing and the U.S. Refugee Family Reunification Program*, 99 Cal. L. Rev. 1635, 1645 (2011).
[4] Cronin Memo, *supra* note 1.
[5] *Id.*
[6] Pub. L. No. 109-162; 34 U.S.C. § 40702(a)(1)(A).
[7] 28 C.F.R. § 28.12.

Homeland Security, in consultation with the Attorney General, determines that the collection of DNA samples is not feasible because of operational exigencies or resource limitations."[8] In 2010, then-DHS Secretary Janet Napolitano further expanded the exemptions to prohibit DHS components from taking DNA samples from individuals in immigration custody not charged with a crime and from individuals awaiting deportation proceedings.[9]

10.     In October 2019, the Department of Justice issued a proposed rule that effectively repeals the 2010 Napolitano exemptions and expands DNA collection to the majority of immigrants detained under U.S. authority.[10] The proposed rule also removes authority from the DHS Secretary to make exemptions under one of the categories described under the previous Department of Justice regulations, where "the collection of DNA samples is not feasible because of operational exigencies or resource limitations."[11] The proposed rule requires that DNA collected from immigrant detainees be added to the Combined DNA Index System ("CODIS"),[12] the FBI's "program of support for criminal justice DNA databases."[13]

### Rapid DNA

11.     DHS has stated that it plans to collect DNA using a technology called "Rapid DNA." DHS describes Rapid DNA testing as "the streamlined process of developing a DNA profile from a reference sample buccal (cheek) swab."[14] Rapid DNA machines are self-contained, automated desktop units that process DNA data and conduct analysis.[15] The process only requires human review "if the Rapid DNA system produces an inconclusive result," at which point a trained

---

[8] *Id.*
[9] Letter from Janet Napolitano, Sec'y of Homeland Security, to Eric Holder, Att'y General (Mar. 22, 2010), *available at* https://www.eff.org/document/march-22-2010-napolitano-letter-re-dna-collection.
[10] *See* 84 Fed. Reg. 56397, 56398.
[11] *Id.* at 56398-99.
[12] *Id.* at 56399.
[13] Federal Bureau of Investigation, "Frequently Asked Questions on CODIS and NDIS," https://www.fbi.gov/services/laboratory/biometric-analysis/codis/codis-and-ndis-fact-sheet (last accessed Oct. 30, 2019).
[14] U.S. Dep't of Homeland Security, "Privacy Impact Assessment for the Rapid DNA Operational Use DHS/ICE/PIA-050," at 2 (June 25, 2019), https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-rapiddna-june2019_1.pdf.
[15] *Id.*

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

technician must analyze the DNA profiles.[16] Manufacturers of DNA analyzers claim the Rapid DNA testing process can be completed in less than two hours.[17]

12.    In 2017, Congress passed the Rapid DNA Act of 2017, which authorized the FBI Director to "issue standards and procedures for the use of Rapid DNA instruments and resulting DNA analyses."[18] Currently, the FBI is working toward testing and implementation to eventually allow law enforcement agencies across the country to upload Rapid DNA samples into CODIS.[19]

13.    Rapid DNA testing has been shown to be error prone. In 2017, the Swedish National Forensic Centre published a report detailing serious problems with certain Rapid DNA analyzers, including "numerous issues with the system related to the hardware, firmware, software as well as the cartridges. The most severe issues are the retrieval of an incorrect DNA profile, PCR product or sample leakage and the low success rate. In total 36% of the runs had problems or errors effecting two or more samples resulting in a 77% success rate for samples consisting of . . . amounts where complete DNA profiles are expected."[20]

**Rapid DNA Testing at the U.S.-Mexico Border**

14.    In early May 2019, media outlets reported that ICE was planning to initiate a pilot program to conduct Rapid DNA testing on a subset of adults and children that presented themselves as family units at the border.[21] The purpose of the pilot program was to identify and prosecute individuals who were not related through a biological parent-child relationship.[22] The pilot program was confirmed as a joint operation between ICE and CBP at two locations at the U.S.-Mexico

---

[16] *Id.*
[17] ANDE, "What is Rapid DNA?", https://www.ande.com/what-is-rapid-dna/ (last visited Oct. 30, 2019).
[18] Pub. L. No. 115-50.
[19] Federal Bureau of Investigations, "Rapid DNA," https://www.fbi.gov/services/laboratory/biometric-analysis/codis/rapid-dna (last accessed Oct. 30, 2019).
[20] *See* Experiences from operating the RapidHIT® System, Nationellt forensiskt centrum, NFC (2017), *available at* https://nfc.polisen.se/siteassets/dokument/informationsmaterial/rapporter/nfc-rapport-2017-02_experiences-from-operating-the-rapidhit-system.pdf.
[21] *See, e.g.,* Priscilla Alvarez & Geneva Sands, "Exclusive: DHS to start DNA testing to establish family relationships on the border," CNN (May 1, 2019), https://www.cnn.com/2019/04/30/politics/homeland-security-dna-testing-immigration/index.html.
[22] *Id.*

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

border.[23] The government contracted with ANDE, a Massachusetts-based Rapid DNA testing company, to conduct the Rapid DNA testing for the pilot program.[24]

15.     Later that month, ICE released a Request for Proposal[25] seeking a contractor to expand the Rapid DNA testing program for ten months at seven locations on the U.S.-Mexico border.[26] On June 14, 2019, Bode Cellmark Forensics, Inc. was awarded the Rapid DNA testing expansion contract for $5.2 million,[27] with an initial order for $322,000 and a cost of $100 per test.[28]

16.     On June 25, 2019, ICE published a Privacy Impact Assessment ("PIA") for "Rapid DNA Operational Use," DHS/ICE/PIA-050, which described ICE's plans to use Rapid DNA testing at the U.S.-Mexico border.[29] In the PIA, ICE asserts that in the spring of 2018, the agency become aware of an increase in family unit fraud encountered at the U.S.-Mexico border, and that such fraud "can lead to, or stem from, other crimes, including immigration violations, identity and benefit fraud, alien smuggling, human trafficking, foreign government corruption, and child exploitation."[30] The PIA further states that the DNA testing process to establish a parent-child relationship can be conducted in approximately 90 minutes without human review.[31] The PIA identified general legal authority under which ICE asserts it may collect DNA.[32] The PIA also stated that the process required consent from the adult in the family unit, but noted that refusal to participate in the testing

---

[23] Megan Molteni, "How DNA Testing at the US-Mexico Border Will Actually Work," Wired (May 2, 2019), https://www.wired.com/story/how-dna-testing-at-the-us-mexico-border-will-actually-work/.
[24] Alvarez & Sands, *supra* note 21.
[25] Federal Business Opportunities, "Rapid DNA Testing," (posted May 28, 2019), https://www.fbo.gov/index?s=opportunity&mode=form&id=32c057cda9feb9d169f9b5ed983734ae&tab=core&_cview=0.
[26] U.S. Immigration Enforcement Homeland Security Investigations, "Statement of Work for Rapid DNA Testing Program," (May 31, 2019), *available at* https://www.fbo.gov/utils/view?id=debd47e87a94224412a6413b75845624.
[27] Federal Business Opportunities, "Rapid DNA Testing," (posted June 14, 2019), https://www.fbo.gov/index?s=opportunity&mode=form&tab=core&id=d5acaa928359c6cc9695a211e5fbdc32&_cview=0.
[28] Statement of Work, *supra* note 26.
[29] Privacy Impact Assessment for the Rapid DNA Operational Use, *supra* note 14.
[30] *Id.* at 1.
[31] *Id.* at 2.
[32] *Id.* at 4 n.8 (identifying 8 U.S.C. § 1357(b) as granting such authority ("Any officer or employee . . . shall have power and authority to administer oaths and to take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States . . .")).

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

1  would be considered "in determining whether to process the adult and child as a [family unit]."[33]

2  Finally, the PIA stated that its initial planned use of Rapid DNA testing would involve migrants at

3  the border that agents suspected of family unit fraud, but that the agency may roll out use of the

4  technology more broadly in the future to lawful permanent residents and encounters beyond the

5  border context.[34]

6  **EFF'S FOIA REQUESTS**

7  **A.    ICE FOIA Request 2019-ICFO-49258**

8          17.    In an email dated July 12, 2019, Plaintiff submitted a request under the FOIA, 5

9  U.S.C. § 552, to ICE for records pertaining to the agency's policies and procedures on Rapid DNA

10  testing to detect family fraud, based on the June 25 PIA ("July 12 ICE FOIA on Rapid DNA Testing

11  PIA").

12          18.    The request sought records discussing or pertaining to the following:

13                  a.      Testing of Rapid DNA technology used by ICE, including accuracy of DNA

14                          matches, rates of cartridge contamination during DNA processing, rates of

15                          sample mix-up, etc.

16                  b.      The specific and exact DNA loci processed using Rapid DNA, including

17                          which STR loci ICE relies on to "verify parent-child relationship."

18                  c.      Training materials, curricula, handouts, etc provided to ICE employees on

19                          how to collect a buccal swab, how to use the Rapid DNA equipment, and, if

20                          applicable, how to interpret the analysis produced by the Rapid DNA

21                          equipment.

22                  d.      Training materials, curricula, handouts, etc provided to ICE employees so that

23                          they can become "authorized testers" or "trained technicians" as those terms

24                          are used in the PIA on page 2, n.5.

25                  e.      Materials discussing the qualifications of a "trained technician supplied by the

26                          vendor" authorized to analyze DNA profiles resulting from inconclusive tests

27  ────────────────

28  [33] *Id.* at 4-5.
    [34] *Id.* at 11.

(referenced on PIA page 2).

f.     The privacy statements ICE will provide to family members when ICE requests that they provide a DNA sample, including copies translated into non-English languages (referenced on PIA page 4).

g.     The consent form that ICE will provide to family members on which they "may affirmatively elect to submit to Rapid DNA testing," including copies translated into non-English languages (referenced on PIA page 4).

h.     Training materials, curricula, handouts, etc provided to ICE employees regarding criteria used to identify family members for Rapid DNA testing.

i.     Training materials, curricula, handouts, etc provided to ICE employees who will be interacting with families selected for Rapid DNA testing, and specifically those who will be providing family members with the privacy statements and consent forms and those who will be collecting buccal swabs from family members.

j.     Training materials, curricula, handouts, etc provided to telephonic interpreters who will be available "if ICE encounters other languages" during the process.

k.     Materials discussing what ICE does with the DNA samples collected from family members, including, if applicable, what ICE does with the Rapid DNA cartridge containing the sample once it is processed through the Rapid DNA equipment.

l.     Materials discussing what ICE does after receiving the results of the Rapid DNA testing, whether a positive or a negative match.

m.     Materials discussing procedures for individuals to challenge a negative match.

n.     Exemplars of warrant affidavits or requests for warrants that ICE personnel will provide to a court to obtain a warrant authorizing the Rapid DNA testing of individuals who previously elected not to consent to testing.

o.     Materials discussing "DNA information" that ICE plans to retain for 75 years according to the Biometrics retention schedule governed by NARA and

-8-

discussed on page 11 of the PIA.

    p.    Materials related to the legal justification for authorizing collection of Rapid DNA samples from families at the border.

19.    Plaintiff's FOIA request sought expedited processing and also formally requested that it not be charged search or review fees for its request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.10(b)(6). Plaintiff further requested that it be granted a waiver of all fees related to its request because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(l).

20.    By email on July 26, 2019, ICE provided a response to the FOIA request. ICE stated that the "request was **too broad in scope**, did not specifically identify the records which you are seeking, or only posed questions to the agency" (emphasis in original). The response asked that Plaintiff resubmit their request with a "reasonable description" of the records sought, and that if ICE did not hear back within 30 days of the date of the letter,[35] it would administratively close the request. Finally, the agency stated that the response should not be perceived as a denial of the request, but indicated that it would take no action until it received a perfected request.

21.    By email on August 25, 2019, Plaintiff timely appealed ICE's determination that the request was too broad in scope. The appeal argued that the original request provided ample evidence that the request stemmed directly from the June 25 PIA, often pointing to particular page numbers within the PIA that referenced policies, procedures, or other guidance. Plaintiff requested expedited processing on the appeal. Plaintiff also sent this appeal via U.S. Mail to the ICE Office of the Principal Legal Advisor on August 26, 2019.

22.    By email on September 13, 2019, ICE acknowledged receipt of Plaintiff's administrative appeal. ICE provided a new number for the appeal, **2019-ICAP-00599**.

23.    By email on October 21, 2019, ICE referenced the request and administrative appeal, and stated that "further clarification is needed regarding your request." The agency did not provide a

---

[35] Although EFF responded to ICE's request for more information within 30 days of the date of ICE's correspondence, the agency's deadline was in error because DHS regulations allow requesters "30 working days" to respond to such a request. 6. C.F.R. § 5.3(c).

1    determination on the appeal in the correspondence.

2        24.    To date, ICE has not provided a determination as to Plaintiff's administrative appeal.

3        25.    Plaintiff has exhausted all applicable administrative remedies with respect to its July

4    12 ICE FOIA on Rapid DNA Testing PIA.

5        26.    ICE has wrongfully withheld the requested records from Plaintiff.

6    **B.    ICE FOIA Request 2019-ICFO-49262**

7        27.    In an email dated July 12, 2019, Plaintiff submitted a request under the FOIA, 5

8    U.S.C. § 552, to ICE for records pertaining to the agency's pilot program on Rapid DNA testing to

9    detect family fraud and for communication with other agencies on Rapid DNA testing ("July 12 ICE

10   FOIA on Rapid DNA Testing Pilot Program and Communications").

11       28.    The request sought records discussing or pertaining to the following:

12               a.    The Rapid DNA testing pilot program conducted in May 2019, including the:

13                     i.    Cost of the pilot program;

14                     ii.   Sites of the two locations used in the pilot program;

15                     iii.  Total number of people that crossed the two locations where the pilot

16                           program was held during the pilot period;

17                     iv.   Number of individuals and family units tested during the pilot program;

18                     v.    Number of individuals and family units identified as not related through

19                           a biological parent-child relationship;

20                     vi.   Number of tests identified as inconclusive that required analysis by a

21                           trained technician; and

22                     vii.  Number of tests identified as inconclusive after analysis by a trained

23                           technician.

24               b.    Training materials, curricula, handouts, etc. provided to ICE employees

25                     regarding criteria used to identify family members for Rapid DNA testing

26                     during the pilot program.

27               c.    Materials provided to family members subject to Rapid DNA testing during

28                     the pilot program, including consent forms and privacy statements.

-10-

d.    Any Rapid DNA testing conducted since the pilot program in May 2019, including the:

    i.     Location sites;

    ii.    Number of individuals and family units tested at each site;

    iii.   Number of people and family units identified as not related through a biological parent-child relationship;

    iv.    Number of tests identified as inconclusive that required analysis by a trained technician; and

    v.     Number of tests identified as inconclusive after analysis by a trained technician.

e.    Communications between ICE and ANDE regarding Rapid DNA testing, including contracts, from January 2018 to present.

f.    Communications between ICE and Bode Cellmark Forensics, Inc. regarding Rapid DNA testing, including contracts, from January 2018 to present.

g.    Communications between ICE and the U.S. Department of Homeland Security regarding Rapid DNA testing from January 2017 to present.

h.    Communications between ICE and CBP regarding Rapid DNA testing from January 2017 to present.

i.    Communications between ICE, the White House, and/or Members of Congress regarding Rapid DNA testing from January 2017 to present.

29.    Plaintiff's FOIA request sought expedited processing and also formally requested that it not be charged search or review fees for its request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.10(b)(6). Plaintiff further requested that it be granted a waiver of all fees related to its request because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(l).

30.    By email on July 26, 2019, ICE provided a response to the FOIA request. ICE stated that the "request was **too broad in scope**, did not specifically identify the records which you are seeking, or only posed questions to the agency" (emphasis in original). The response asked that

Plaintiff resubmit their request with a "reasonable description" of the records sought, and that if ICE did not hear back within 30 days from the date of the letter,[36] it would administratively close the request. Finally, the agency stated that the response should not be perceived as a denial of the request, but indicated that it would take no action until it received a perfected request.

31.     By email on August 25, 2019, Plaintiff timely appealed ICE's determination that the request was too broad in scope. The appeal argued that the original request asked for specific, detailed information that was reasonably described such that an agent with knowledge of ICE's Rapid DNA testing pilot program could conduct a search. Plaintiff requested expedited processing on the appeal. Plaintiff also sent this appeal via U.S. Mail to the ICE Office of the Principal Legal Advisor on August 26, 2019.

32.     By email on September 11, 2019, ICE acknowledged receipt of Plaintiff's administrative appeal. ICE provided a new number for the appeal, **2019-ICAP-00588**.

33.     By email on October 8, 2019, ICE provided a response to the administrative appeal. ICE reversed its decision as to the first four categories of information sought, stating that those paragraphs "appear to reasonably describe the records sought." ICE stated it was remanding the request to the ICE FOIA office for processing and obtaining the required documents. ICE reiterated its previous response as to the remaining portions of the request, stating that they were "overly broad and do not reasonably describe the records sought." ICE also denied expedited processing of the original request. ICE granted Plaintiff's request to be classified as a representative of the news media, but stated that it would not "at this time, evaluate whether the statutory criteria . . . for a waiver or reduction of fees have been met."

34.     To date, ICE has not produced any documents under the first four categories of records in the request. To date, ICE has not provided a determination as to the remaining portions of Plaintiff's administrative appeal.

35.     Plaintiff has exhausted all applicable administrative remedies with respect to its July 12 ICE FOIA on Rapid DNA Testing Pilot Program and Communications.

36.     ICE has wrongfully withheld the requested records from Plaintiff.

---

[36] *See id.*

**C.      CBP FOIA Request CBP-OIT-2019-076430**

37.      On August 14, 2019, Plaintiff submitted a request under the FOIA, 5 U.S.C. § 552, to CBP through its online FOIA portal for records pertaining to the agency's use of Rapid DNA testing on migrant families at the U.S.-Mexico border, including training materials, data related to the pilot program conducted in May 2019, and communications between ICE and other entities ("August 14 CBP FOIA").

38.      The request sought records discussing or pertaining to the following:

a.      Training materials, curricula, handouts, etc. provided to CBP employees regarding criteria used to identify family units for Rapid DNA testing.

b.      The Rapid DNA testing pilot program conducted in May 2019 at two sites on the U.S.-Mexico border, including the:

i.      Cost of the pilot program;

ii.     Sites of the two locations used in the pilot program;

iii.    Total number of individuals and family units that crossed the two locations where the pilot program was held during the pilot period;

iv.     Number of individuals and family units CBP referred for testing during the pilot program; and

v.      Number of individuals and family units identified as not related through a biological parent-child relationship as a result of the testing.

c.      Any Rapid DNA testing conducted at the U.S.-Mexico border since the May 2019 pilot program, including the:

i.      Location sites;

ii.     Number of individuals and family units CBP referred for testing; and

iii.    Number of individuals and family units identified as not related through a biological parent-child relationship as a result of the testing.

d.      Communications between CBP and ICE regarding Rapid DNA testing from January 2017 to present.

e.      Communications between CBP and DHS regarding Rapid DNA testing from

-13-

1    January 2017 to present.

2          f.      Communications between CBP, the White House, and/or Members of

3    Congress regarding Rapid DNA testing from January 2017 to present.

4          39.     Plaintiff's FOIA request sought expedited processing and also formally requested that

5    it not be charged search or review fees for its request because EFF qualifies as a representative of the

6    news media pursuant to the FOIA and 28 C.F.R. § 16.10(b)(6). Plaintiff further requested that it be

7    granted a waiver of all fees related to its request because disclosure of the requested information is in

8    the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(l).

9          40.     Through the online FOIA portal, on August 14, 2019, CBP acknowledged receipt of

10   the request. On August 16, 2019, CBP granted Plaintiff's expedited processing request. Also on

11   August 16, 2019, CBP updated its online FOIA portal to recognize Plaintiff as a media requester, but

12   provided notice that the fee waiver request was not applicable because the request was not billable.

13         41.     To date, CBP has not substantively responded to Plaintiff's initial request.

14         42.     Plaintiff has exhausted all applicable administrative remedies with respect to its

15   August 14 CBP FOIA.

16         43.     CBP has wrongfully withheld the requested records from Plaintiff.

17                                    **CAUSE OF ACTION**

18   **Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records**

19         44.     Plaintiff repeats and realleges paragraphs 1-44.

20         45.     Defendant DHS, and its components ICE and CBP, have wrongfully withheld agency

21   records requested by Plaintiff by failing to conduct an adequate search for records responsive to

22   Plaintiff's request, by failing to produce all records in the agency's possession responsive to

23   Plaintiff's request, and by failing to adequately segregate responsive from non-responsive records.

24         46.     Defendant DHS, and its components ICE and CBP, have wrongfully denied

25   Plaintiff's request for a waiver of all processing fees to comply with the statutory time limit for

26   responding to Plaintiff's request.

27         47.     Defendant DHS, and its components ICE and CBP, have wrongfully denied

28   Plaintiff's request for expedited processing by wrongfully concluding that Plaintiff's request does

not demonstrate an urgent need for disclosure of the requested records and/or failing to comply with the statutory time limit for responding to Plaintiff's request.

48.     Plaintiff has exhausted all applicable administrative remedies with respect to Defendant's wrongful withholding of the requested records.

49.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

1.   Order Defendant DHS, and its components ICE and CBP, to process immediately the requested records in their entirety;

2.   Order Defendant DHS, and its components ICE and CBP, upon completion of such processing, to disclose the requested records in their entirety and make copies available to Plaintiff;

3.   Order Defendant DHS, and its components ICE and CBP, to grant Plaintiff's requests for a waiver of all processing fees;

4.   Provide for expeditious proceedings in this action;

5.   Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

6.   Grant such relief as the Court may deem just and proper.


DATED:  November 12, 2019

By   _/s/ Saira Hussain_
Saira Hussain
Jennifer Lynch
Mark Rumold
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
saira@eff.org

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION